# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE MARY CASTRO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | 1:16-cv-1154-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST ROSE MARY CASTRO**<br><br>(Doc. 23) |

**I.   INTRODUCTION**

Plaintiff, Rose Mary Castro ("Plaintiff"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act. (Docs. 1 and 20). The Commissioner filed an Opposition. (Doc. 23). Plaintiff did not file a Reply. The matter is currently before the

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] After reviewing the administrative record and the pleadings, the Court finds that the ALJ applied the correct legal standards and the decision is supported by substantial evidence. Therefore, Plaintiff's appeal is DENIED.

## II. BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff filed application for DIB and SSI on May 2012, alleging disability due to multiple sclerosis ("MS"), swelling, gallstones, anxiety and depression. AR 92; 99-100. The parties agree that the Plaintiff properly exhausted her administrative remedies and that the Appeals Council denied Plaintiff's appeal. (Doc. 20, pg. 4; Doc. 23, pg. 2). Therefore, this appeal is a review of Administrative Law Judge Sharon L. Madsen's ("ALJ") decision issued on December 12, 2014, which is considered the Commissioner's final order. *See*, 42 U.S.C. §§ 405(g), 1383(c)(3). AR 26-36.

## III. ISSUES FOR JUDICIAL REVIEW

Plaintiff argues that the ALJ failed to include Plaintiff's severe fatigue and numbness into the residual functional capacity ("RFC"), which are symptoms associated with her multiple sclerosis. (Doc. 20, pgs. 9-12). She also contends that the ALJ improperly discounted Plaintiff's complaints of pain and fatigue. (Doc. 20, pgs. 12-14). The Commissioner opposes each of these arguments and contends that the ALJ properly assessed the medical evidence and properly considered Plaintiff's subjective complaints. (Doc. 22, pgs. 5-16).

## IV. PLAINTIFF'S HEARING TESTIMONY

Plaintiff completed high school, but has no additional schooling. AR 41. She is married and was twenty-eight years old at the time of the hearing. AR 39-40. Her husband is employed and they reside alone in their home. AR 40. Prior to getting sick, she worked at McDonalds. She also previously delivered auto parts and worked as a security guard sitting in a guard shack. AR 43-46.

---

[2] The parties have consented to magistrate judge jurisdiction. (Docs. 7 and 8).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

She is no longer able to work due to symptoms related to her MS. She has a neurologist, but is also seen by a primary care physician. AR 48. She just completed taking her first month supply of Rebif (to treat her MS symptoms) which causes her to be depressed, anxious, and dizzy.[4] AR 55. About a month ago, she experienced numbness in her leg. AR 48. She went to the emergency room and was told they could not find any blood clots and that it was "just a spell." AR 47. Her primary care doctor prescribed a walker for indoor and outdoor use. She needed the walker for two to three weeks and then the symptoms went away. AR 47.

In addition to numbness in her legs, she also has numbness in her fingertips which gets worse if she pushes herself too much when doing chores around the house. AR 49. She has difficulty reaching for food items in her kitchen cabinets because of numbness in her fingertips and she is afraid to grab items. AR 60. She spreads her housework out over the week so that she is not on her feet too long. AR 50. If she does too much housework at once, she experiences pain. AR 51. When washing the dishes, she as to lean on the sink after six or seven minutes. She also has to take her time when cleaning the bathroom; she divides it into parts and takes a break after cleaning each section. AR 51-53. She is able to walk about half a block and she can sit for twenty to thirty minutes before needing to stand up and move around. AR 52. She is able to carry a seven pound bag of ice from the store to the car, but does so with difficulty - she gets shaky and feels like she is going to drop it before she gets to her car. AR 52. As a result, she does not go to the grocery store alone. AR 61. Her husband takes the items off the shelves, bags the groceries, places the bags into car, and takes them into the house. AR 62-63. She will take a bag with a loaf of bread or something similarly light. AR 63. She will either use the store electric cart or will lean on the grocery cart for support while she is in the store. AR 62.

In a typical day, Plaintiff gets up with her husband when he leaves for work. AR 42. He watches her go down the stairs to make sure she does not fall, and she helps him make his lunch before he leaves. AR 42. She watches television for a few hours and will sometimes nap. AR 43. She attends appointments and gets around town with the assistance of her husband. She is able to cook and take care of her personal hygiene. AR 41. However, when showering, it is difficult for

---

[4] Plaintiff testified she has been experiencing light-headedness and dizziness for the last five or six months. AR 56.

3

her to reach her back and below her knees. AR 41-42. It also takes her longer to wash her hair because her arms become shaky. AR 60. She leaves the laces on her shoes loose so she can slide her feet into them because she can't bend over. AR 66.

In terms of hobbies, Plaintiff spends most of her time at home alone and rarely goes out. AR 42. She used to enjoy making beaded bracelets but she is no longer able to hold onto the string and the beads. AR 66. She has difficulty reading because she forgets what she has read. AR 63. She occasionally speaks with friends and relatives on the phone during the day when they call to check on her. AR 64.

## V.    THE MEDICAL RECORD[5]

Plaintiff began treatment at the Tulare Community Health Clinic ("TCHC") in February 2006. AR 401. At that time, it was noted that she was previously treated by Dr. Alzagatiti for multiple sclerosis and was put on injectable Copaxone for treatment. AR 398; 401. The medication was discontinued after approximately one month because Plaintiff began having shortness of breath. AR 401. Her symptoms had resolved and she reported feeling well otherwise. AR 401. She continued to be treated at TCHC, but was not taking any medications for her MS. AR 375-376; 379; 398.

On June 6, 2012, Plaintiff saw Dr. Allen K. Lui, M.D., at the TCHC. At that time, Plaintiff requested disability paperwork. AR358. She reported that she was diagnosed with MS in 2005 and began to experience symptoms in or around 2007. AR 358. Her symptoms were "mild" but she was having active symptoms. AR 358. She also indicated that her previous physician, Dr. Chahil, denied her request to complete disability paperwork. AR 358. Dr. Lui reviewed the chart and agreed with Dr. Chahil's decision that there were currently no grounds for a disability claim. AR 358. He stated that he had reviewed Plaintiff's entire chart looking for Magnetic Resonance Imaging (MRI) and other diagnostic studies and was only able to locate an MRI from March 2005. AR 358. He noted no recent studies had been done likely due to finances. AR 358. On examination, he found Plaintiff had no gait, eating, breathing, or sensory issues, and no focal

---

[5] The Court has reviewed the entire medical record (AR 328-683) but will only summarize those records relevant to this appeal.

4

neurological deficits. AR 358–359.

On June 8, 2012, Plaintiff returned to see Dr. Lui and presented additional records so that Dr. Lui could complete the disability paperwork. AR 356. Dr. Lui noted that a March 18, 2005 MRI of Plaintiff's brain showed "multiple small lesions suggesting [MS]." He also reviewed two additional MRIs of Plaintiff's cervical and thoracic spine taken in August 2005 that showed no lesions. AR 356. He confirmed the MS diagnosis. AR 356-357. He stated Plaintiff was first diagnosed in 2005 after experiencing weakness and diplopia (double vision). AR 357. He noted that Plaintiff was currently asymptomatic but that she wanted medications to prevent the progression of disease. He wrote a letter for Medicaid and told Plaintiff that she will not likely qualify for disability at this time given her benign exam. AR 357.

One June 25, 2012, Plaintiff returned to see Dr. Liu a third time requesting that he complete the disability paperwork. AR 354-355. He again rejected Plaintiff's requests. AR 354. He noted that Plaintiff was stable with her MS and that she had no MRI studies or treatment since 2005 when she was diagnosed. He told Plaintiff again that she did not qualify for disability but she might qualify for disability if her MS is not treated and it progresses. AR 355. Plaintiff expressed an interest in getting treatment. Dr. Lui again encouraged her to apply for Medicaid. AR 355.

On November 28, 2012, Dr. Richard Surrusco reviewed Plaintiff's medical record and concluded that Plaintiff could perform a medium range of work. AR 88-96. Dr. G. Bugg, affirmed this conclusion on May 28, 2013. AR 130-132.

On May 7, 2013, consultative examining physician Dr. Emmanuel Fabella, M.D., performed an internal medicine consultation. AR 425-430. Plaintiff's gait and balance were normal. AR 427. She had minimal difficulty getting up from a sitting position and did not require the use of an assistive device for ambulation. AR 427. Her range of motion and strength were normal in her bilateral extremities, she had normal muscle bulk and tone without atrophy, and she had no focal motor deficits. AR 428-429. Her neurological examination was similarly normal, except that the doctor noted that Plaintiff was easily fatigued and became dizzy when exposed to heat. AR 429. Dr. Fabella found Plaintiff could lift and/or carry up to ten pounds frequently and

twenty pounds occasionally; stand and/or walk for four to six hours in an eight-hour day secondary to fatigue; she had no sitting restrictions; she did not require an assistive device; she could climb, balance, knee, and crawl occasionally secondary to fatigue; she could walk on uneven terrain occasionally, but it would be best if she avoided climbing ladders and working at heights due to fatigue and obesity; she had no hand impairment; and she should avoid heat exposure. AR 429-439.

On May 7, 2013 (the same day as Dr. Fabella's examination), consultative examining physician Roger A. Izzi, M.D., performed a psychiatric evaluation. AR 433-435. Plaintiff reported that she lived with her husband and family, could perform all of her own household chores, did not visit any family or friends, and she had difficulty sleeping stating, "I have so much on my mind." AR 433. She denied suicidal ideation and auditory and visual hallucinations. AR 434. She also denied a history of psychiatric hospitalizations, was not consulting any mental-healthcare professionals, and she was not taking any prescribed medication because she had no insurance. AR 433-434. On examination, Plaintiff was alert, responsive, and fully oriented; her posture and gait were unremarkable; and her affect was dysphoric. She stated she felt depressed which began when she was diagnosed with MS in 2005. Her memory, attention, concentration, speech, and cognitive functioning were all intact. AR 434-435.

Dr. Izzi concluded that Plaintiff was able to perform simple and repetitive-type tasks consistently over an eight-hour period. However, she would have mild limitations getting along with peers and supervisors due to her mood and may have difficulty performing complex tasks on a consistent basis over an eight-hour period if her mood significantly fluctuated. She appeared able to respond to usual work situations regarding attendance and safety, and was able to deal with routine workplace changes. She could also manage her own funds. AR 435.

On June 21, 2013, Dr. Iakawa, M.D, reviewed the record and noted that Plaintiff had depression since her MS diagnosis in 2005, however, she was not receiving any treatment . He noted that Plaintiff's activities of daily living were intact from a psychological standpoint and overall her symptoms were non-severe. AR 127-128.

On February 25, 2014, a brain MRI revealed "numerous foci of abnormal increased signal

on T2 and flair images present in the white matter of both cerebral hemispheres." AR 439. Small white matter was also seen in the corpus collosum. No significant mass effect was seen. The MRI findings were consistent with a clinical history of demyelinating disease/multiple sclerosis. AR 439; (duplicate AR 682).

On March 25, 2014, Plaintiff saw Dr. Reynaldo Y. Garcia, M.D., to follow-up on the MRI results. AR 680-681. She reported she was in pain due to osteoarthritis and MS. AR 678. She also reported that she had been on medication but stopped due to insurance issues. AR 680. She denied any hospitalizations. AR 680. Plaintiff told Dr. Garcia that she was applying for disability. AR 680. On examination, Dr. Garcia found Plaintiff was pleasant and in no acute distress; had a normal neurologic examination-she was nonfocal, alert, and oriented; had normal psychiatric examination; and her cognitive functioning was intact. AR 680.

Dr. Garcia saw Plaintiff again on April 22, 2014 and May 23, 2014, with similar examination results as the previous visit. AR 676-679. Plaintiff requested that Dr. Garcia complete disability paperwork at the May visit. AR 676.

On May 26, 2014, Dr. Garcia completed a physical Medical Source Statement. He noted Plaintiff suffers from recurrent join pain, fatigue, headaches, insomnia, and has moderate to severe back pain. AR 440. Dr. Garcia opined that Plaintiff would be limited to sitting, standing and walking less than two hours an eight-hour work day; she could rarely lift and carry less than ten pounds, and occasionally lift ten pounds; she could rarely twist or climb stairs; and she should never stoop, crouch, squat, or climb ladders; she required a position that allows her to shift positions at will; and she needed to take unscheduled breaks every hour for ten minutes. AR 441-442. He also opined Plaintiff would need unscheduled breaks every hour lasting about ten minutes due to limitations on muscle weakness, chronic fatigue, pain, and numbness; she would be off task twenty-five percent of the time; and would likely miss more than four days of work per month as a result of her impairment or treatment. AR 441; 443. Finally, he noted that Plaintiff was incapable of even "low stress" work due to recurrent joint pain. AR 443.

On July 15, 2014, Plaintiff presented to the emergency department at TCHC reporting that she had been having pain and swelling in her right calf for one day. AR 615; 626-627. She denied

7

being on any medication . AR 615. A neurological examination showed she was "awake" and "alert." AR 615. A musculoskeletal exam showed that she had normal circulation, sensation, and movement, and was not at risk for falling. AR 615. A mental status examination showed that she was calm. AR 615. Her fall risk assessment showed that she was not agitated or confused, had no history of falls, no issues in mobility (unsteady gait, ambulatory aid, crutches/can/walker), and did not have any physical, visual, or auditory impairments affecting her mobility. AR 630. Dr. Geron Sheppard, M.D., treated her and noted that Plaintiff reported right-knee pain and swelling. AR 627. He noted no deep vein thrombosis and ordered an ultrasound of the right lower extremity for calf pain and swelling. AR 627; 635. Dr. Kendall L. Wong, M.D., conducted an ultrasound and concluded that "[n]o songraphic evidence of acute deep venous thrombosis is seen." AR 635.

Plaintiff saw Dr. Garcia again on August 20, 2014. AR 674. He noted that Plaintiff was at the ER due to swelling in both legs, that she had mobility and balance issues, and he prescribed a walker. AR 674. On examination, Dr. Garcia found Plaintiff presented as pleasant, in no acute distress, her neurological examination was normal (nonfocal, alert, and oriented), and her psychiatric examination revealed that she was alert, oriented, her cognitive function was intact, and she was cooperative with the examination. AR 67.

## VI. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[6] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work,[7] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

## VII. SUMMARY OF THE ALJ'S FINDINGS

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 17-28. At step one, she found that Plaintiff met the insured status requirements through September 30, 2014, and that she had not engaged in substantial gainful activity since March 8, 2012. AR 19. At step two, the ALJ identified MS and morbid obesity as severe impairments, but found that Plaintiff's depression was a nonsevere impairment. AR 19-20. At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 20-21.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform a modified version of sedentary work as defined in 20 CFR §§ 416.967 (c), §§ 416.967 (c). Specifically, she found that Plaintiff could: lift and carry ten pounds occasionally and

---

[6] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
[7] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

9

frequently; stand and walk for two hours; sit for six hours in an eight-hour workday; occasionally stoop, crouch, crawl, kneel and climb; but she could not climb ladders, ropes, or scaffolds, or work around dangerous heights or moving machinery. AR 21-26. Based on Plaintiff's work history, the ALJ concluded that Plaintiff could not perform her past relevant work as a deliverer. AR 26. However, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy including an order clerk, information clerk, and a bonder/semiconductor. AR 26-27.

**VII. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

**VIII. DISCUSSION**
### A. The ALJ's Formulation of the RFC and her Assessment of the Medical Evidence is Supported by Substantial Evidence.

Plaintiff argues that the ALJ's RFC did not include Plaintiff's severe fatigue and numbness which are symptoms of her MS. (Doc. 30, pgs. 9-12). In support of her argument, she cites to Dr. Garcia's medical opinion. However, the ALJ gave specific and legitimate reasons for rejecting Dr. Garcia's opinion, and the RFC incorporates all of Plaintiff's limitations that the ALJ found were supported by the record.

A RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably

attributed to a medically determinable impairment. SSR 96 8p. Moreover, "it is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p. However, it is well established that the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See*, 20 C.F.R. §§ 416.927(d)(2) (RFC is not a medical opinion and is a decision reserved for the Commissioner), 416.946(c) (identifying the ALJ as responsible for determining RFC).

When formulating the RFC, the ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Lester v. Chater,* 81 F. 3d 821, 830 (9th Cir. 1996); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999). To reject a treating or examining doctor's opinion which is contradicted by another doctor's opinion, it may only be rejected for specific and legitimate reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Garrison v. CSS*, 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim v. CSS*, 763 F. 3d 1155, 1161 (9th Cir. 2014).

Here, the ALJ summarized the medical record and evaluated each of the physicians' opinions. AR 21-26. She noted that Dr. Garcia (Plaintiff's treating physician) opined that MS-related fatigue and pain impaired Plaintiff's functional capabilities and that she could sit, stand, and/or walk for a total of less than two hours a day; could only occasionally lift; had limited use of her hands, fingers, and arms; and would be absent from work four days per month due to her impairments. AR 23; 441-442; 674; 682. However, the ALJ rejected this opinion because: (1) Dr. Garcia's physical examinations of Plaintiff were largely normal; (2) his progress reports are void of any functional assessments; (3) his notes did not reveal a complete physical examination or any

findings that would support his opinion; and (4) Plaintiff had made multiple requests for disability forms in the past, AR 23. These findings are specific and legitimate and are supported by the record. For example, Dr. Garcia saw Plaintiff three times. At each visit Plaintiff reported pain due to osteoarthritis and MS. AR 674; 678; 680. However, the doctor's examinations revealed normal neurologic findings - Plaintiff was nonfocal, alert, and oriented, she had a normal psychiatric examination, and her cognitive functioning was intact. AR 676-680. At the last visit in August 2014, the doctor Plaintiff prescribed a walker, but again her physical examination was unremarkable and revealed no significant limitations. AR 674. His opinion was also inconsistent with emergency room doctors' evaluations that found Plaintiff did not have physical or visual impairments affecting her mobility. AR 630. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (The incongruity between a treating physician's opinion and his patient's medical records is a specific and legitimate reason to discount a treating physician's opinion); *Molina, v. CSS*, 674 F. 3d 1104, 1111-1112 (9th Cir. 2012) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir.2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion).

    Additionally, the ALJ noted that Dr. Garcia's functional assessment conflicted with the other medical opinions in the record, including opinions from a treating physician and two examining physicians AR 22-26; 358; 433-435; 439-440. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Specifically, the ALJ gave significant weight to the opinion of Dr. Lui at TCHC who had treated Plaintiff several years earlier and who had denied Plaintiff's repeated requests for disability paperwork. AR 22-23; 356; 358-359. Dr. Lui agreed with Plaintiff's previous treating physician, Dr. Chahil, who had also already denied Plaintiff's requests for disability paperwork. AR 22-23; 358.

    The ALJ also gave weight to Dr. Fabella's opinion who performed a physical examination more recently on May 7, 2013. AR 24; 425-430. Dr. Fabella concluded that Plaintiff could lift and/or carry up to ten pounds frequently and twenty pounds occasionally; could stand and/or walk

for four to six hours in an eight-hour day secondary to fatigue; had no sitting restrictions; did not require an assistive device; could climb, balance, knee, and crawl occasionally secondary to fatigue; could walk on uneven terrain occasionally; should avoid climbing ladders and working at heights due to fatigue and obesity; had no hand impairment; and should avoid heat exposure. AR 429-439.

Finally, the ALJ relied on a consultative examiner's assessment who evaluated Plaintiff's mental functional abilities. He found that Plaintiff appeared to be capable of responding appropriately to routine workplace changes, maintaining regular attendance, and handling workplace hazards. AR 24; 435. He further found Plaintiff appeared capable of performing simple and repetitive-type tasks consistently over an eight-hour period but may have episodic difficulty with complex tasks if her mood fluctuated significantly, and would have mild limitations getting along with peers and supervisors due to her mood. AR 23; 435. After considering the record, the ALJ concluded that Dr. Lui, Dr. Fabella, and Dr. Izzi's opinions best comported with the weight of the evidentiary record. She devised a modified sedentary RFC which incorporated Dr. Fabella's findings related to Plaintiff's fatigue. In fact, she placed more restrictive limitations on Plaintiff's abilities than Dr. Fabella had recommended.

The ALJ also noted Plaintiff experienced increased numbness in her legs in July 2014. AR 23. However, the ALJ found that neurological and musculoskeletal exams at that time in the ER showed Plaintiff had normal circulation, sensation, and movement, and was not at risk for falls. AR 615. Moreover, it was determined that Plaintiff had no issues in mobility (no unsteady gait, ambulatory aids such as crutches, cane, or walker), and she did not have any physical, visual, or auditory impairments affecting her mobility. AR 25; 636-637; 637; 630; 635. Therefore the ALJ sufficiently addressed this symptom.

In support of her arguments, Plaintiff does not acknowledge the ALJ's findings regarding the medical opinions or the other medical evidence. Instead, she merely summarizes Dr. Garcia's findings and ignores the reasons the ALJ gave for rejecting the opinion. Plaintiff notes that Dr. Garcia repeatedly "cited that" Plaintiff experienced pain and fatigue due to MS and osteoarthritis, but to support this claim she only cites to a single record from August 20, 2014. (Doc. 20, pg. 11).

Similarly, Plaintiff also references the later 2014 MRI study confirming the MS diagnosis. However, this is not persuasive as the ALJ acknowledged that these findings were consistent with Plaintiff's history of demyelinating disease/multiple sclerosis. AR 25. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). The Plaintiff does not articulate how these findings demonstrate that the ALJ erred in her analysis. In light of the above, the ALJ gave specific and legitimate reasons for rejecting Dr. Garcia's opinion, and her conclusions and the formulation of the RFC are supported by substantial evidence.

**B. The ALJ Properly Discredited Plaintiff's Subjective Complaints.**

Plaintiff argues that the ALJ's credibility determination was improper because the ALJ failed to provide a detailed analysis of Plaintiff's pain and fatigue and only issued a boilerplate decision citing to Plaintiff's activities of daily living as a basis to reject her testimony. (Doc. 20, pgs. 12-14). The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility and her findings are supported by substantial evidence. (Doc. 23, pgs. 11-14). A review of the entire record reveals Plaintiff's arguments are misplaced.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").[8] Factors an ALJ may consider include: 1) the

---
[8] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016) and 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to read March 28, 2016). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms."

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. §§ 404.1529(c), 416.920(c).

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

Here, after summarizing and analyzing the medical record, the ALJ found that the medical record in conjunction with other reasons did not support Plaintiff's allegations of disabling pain. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its

---

See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Although Social Security Rulings "do not carry the force of law," they "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).

As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo, v. Berryhill*, 862 F. 3d 987, 995 n.5 (9th Cir. 2017) see also *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). SSR 16-3p became effective after the issuance of the ALJ's decision and the Appeals Council denied review in the instant case. It is unclear whether SSR 16-3 applies retroactively. However, the applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of Plaintiff's subjective complaints in this case meets the guidelines set forth in both SSR 16-3p and its predecessor, SSR 96-7p.

disabling effects"). Specifically, the ALJ also noted that Plaintiff daily activities were inconsistent with the extent of her alleged disability, and that the type of medical treatment she received was not consistent with a person alleging such incapacitating symptoms. AR 25. These are both permissible reasons to reject Plaintiff's testimony. For example, when discussing Plaintiff's activities of daily living, the ALJ noted that taking public transportation, performing light household chores, preparing easy meals, shopping, and maintaining her personal care reflected a level of functioning consistent with her RFC for restricted sedentary work. AR 20; 26; 41-43; 59-6373-82; 281. The ALJ's assessment of Plaintiff activities of daily living is consistent with the record because Plaintiff reported that she performed all of her household chores during Dr. Fabella's consultative examination. AR 433. An ALJ can look to daily living activities as part of the credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d at 597; 603-604 (9th Cir. 1989); see also *Thomas*, 278 F.3d at 958 59; *Molina v. Astrue,* 674 F. 3d 1104, 1112-1113 (9th Cir. 2012). Similarly, the ALJ properly noted that Plaintiff went significant periods of time without treatment for both her physical and mental symptoms, and that Plaintiff had only just started medication treatment in October 2014.[9] AR 25. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations); *Bunnell*, 947 F.2d at 346-347 (9th Cir. 1991) (factors to evaluate credibility include failure to seek treatment or follow a prescribed course of treatment); *Fair*, 885 F.2d at 603-604 (9th Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony). Accordingly, there are both valid bases to reject Plaintiff's testimony.

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834. It is

---

[9] The Court notes that Plaintiff told doctors she did not seek treatment because she did not have health insurance. AR 358; 425; 434; 680. However, Plaintiff never pursued Dr. Lui's offers to help her apply for Medicaid so that she could obtain treatment. AR 355; 357.

not the role of the Court to re-determine Plaintiff's credibility *de novo*. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Accordingly, the ALJ's credibility determination was proper.

### X.   CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal against the Commissioner of Social Security. The Clerk of this Court shall enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security, and against Plaintiff Rose Mary Castro. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:   **March 9, 2018**              **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE

18